ANDERSON, (RILEY v.)

[See Riley v. Anderson, Case No. 11,835.]

## Case No. 361.

ANDERSON v. ROSS et al.

[2 Sawy. 91.][1]

District Court, D. California.   Oct. 24, 1871.

SEAMEN—PROTECTION BY MASTER—VIOLENCE OF OFFICERS.

1. It is as much the duty of the master to restrain the violence of his officers as to repress the insubordination of the men. If he fails to exert his authority with vigor and effect for the protection of the men, he will be held responsible in damages.

[Cited in White v. McDonough, Case No. 17,552.]

[2. Cited in The Guiding Star, 1 Fed. 349, to the point that actions for aggravated assault upon seamen should be in personam.]

In admiralty.

D. T. Sullivan, for libellant.

Milton Andros, for respondents.

HOFFMAN, District Judge. My attention has been called, since the delivery of the opinion in the above case, [nowhere reported; opinion not now accessible,] to the fact that Mr. Marcy, Mrs. Ross, and the two boys, testify that they heard the master tell the men to stop fighting. I was, therefore, in error, in saying that the fact that the captain interfered for the protection of the men rested upon his own unsupported testimony. In the light of this correction I have carefully reconsidered the case, and have sought with some solicitude to free my mind from all bias arising from the fact that I had formed an opinion, based upon a partially mistaken view of the evidence. I do not deny that my confidence in the correctness of the conclusion heretofore reached, has been in some degree shaken, and yet, after reflecting upon all the facts, I am unable to bring my mind to the conclusion that the captain did all that he should have done to protect the man from the violence to which he was subjected. The law arms the master with absolute authority, but it charges him with corresponding responsibilities. He is sustained with a high hand, in all measures necessary to control disorder and enforce obedience from the crew. He has a similar authority and a like duty when it is necessary to protect the crew from the brutality of officers. What he permits he is therefore justly considered to commit; and he permits that which he does not, by a prompt and energetic exercise of his authority, prevent. It is clear that a great part of the injuries received by the man were inflicted after the master appeared on deck. The clothes of the latter were stained with blood when he returned to the cabin. It is also evident that the assault by the second mate, which began near the corner of the after hatch-house, continued until the parties "worked over," as the master says, to the main rigging on the starboard side of the vessel.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

The account given by Mr. Marcy, though he says he heard the captain tell them to stop fighting, does not seem to me to indicate that prompt and authoritative interposition which the circumstances demanded. Mr. Marcy denies having struck the man himself, or having spoken to him; I have with some hesitation accepted his statement. His narrative, however, bears some marks of improbability. He says that after throwing the knife overboard, he remained on the port side of the ship (it would seem a calm spectator of the struggle), some three or four minutes, when he heard the captain call. He immediately went to him and took hold of the second mate, and the men were separated.

Estimates of time under such circumstances are of course unreliable. But it may be concluded that Mr. Marcy, by his own showing, remained for an appreciable interval of time while the man was being beaten from the port corner of the hatch-house to the starboard main rigging, the master all the time vainly endeavoring to protect him, and to obtain from the second mate any respect for his authority; and yet he never stirred until called on to assist the master. This seems to me improbable, especially as we find Mr. Marcy, the moment the men were separated, starting with the second mate, in pursuit of Ross, whose only offense was that he was looking on, pursuing him into the forecastle with such demonstrations of violent intentions as to induce the master to follow, and after some occurrences, which are not disclosed, order them out of the forecastle.

That the master, at some period, ordered the men to stop fighting, I do not doubt; but the question is, when did he do so, and with what vigor did he enforce the command? Mr. Marcy is the only one of respondent's witnesses who saw the whole occurrence, and I am constrained to say that I cannot find in his evidence sufficient ground for concluding in the face of so much opposing testimony that the master discharged his whole duty under the circumstances. The fact that the master, so far as appears, in no way rebuked or reprimanded the second mate is not without significance. The latter had, in his presence, not only violently assaulted a seaman, but had continued that assault and inflicted serious injuries upon him, in contempt of the master's orders and in defiance of his authority. And yet the master leaves the deck without a word of rebuke or even remonstrance, and even without enjoining upon the second mate to abstain from further violence. The result of this omission was that the assaults of the second mate were renewed almost as soon as the captain had re-entered the cabin, and were continued until the cries of distress of the man had again called the captain on deck, where he found the second mate with a capstan bar in his hand. The master

seems at once to have accepted the second mate's explanation, that "the man saw the bar in his hand, got scared and cried out." And yet, if the evidence of the man and of numerous witnesses is to be believed, he was struck by the second mate several times with the bar, and finally received some severe blows on the back of his head with something the second mate had fetched from his room for the purpose. All this would, I think, have been prevented had the master, when he retired to his cabin, given strict orders to the second mate not to lay hands on the man or in any way continue his assaults.

On the whole, I recur to my original conclusion that the master, though he has not been guilty of any willful wrong, and is probably a just and humane man, has failed to exert his authority with the vigor and effect which the law required. I consider it of much importance that masters should feel it to be as much their duty to restrain the violence of the officers, as it is to repress the insubordination of the men, and that they will be held responsible if they fail to do their utmost to protect the men from the outrages on the part of the inferior officers, which have so often brought disgrace upon our mercantile marine. Motion for a rehearing denied.